ERIE INSURANCE EXCHANGE

v.

Matthew P. FIDLER, Paul A. Fidler, Jr. and Ruth Naomi Fidler, H/W Merrill Tracy Denslow, IV, Merrill Tracy Denslow, III and Paula A. Denslow.

Appeal of Merrill Tracy Denslow, IV, Merrill Tracy Denslow, III and Paula E. Denslow.

Superior Court of Pennsylvania.

Submitted July 1, 2002.

Filed Sept. 27, 2002.

Kenneth R. Werner, West Chester, for appellants.

Donald M. Grimes, Media, for Erie Insurance, appellee.

Daniel R. Fallon, Downington, for Fidler, appellees.

Before: FORD ELLIOTT, BOWES and BECK, JJ.

OPINION BY BECK, J.:

¶ 1 In this declaratory judgment action, Erie Insurance Exchange (Erie) asks the court to determine if it owes a duty to defend or to indemnify its insureds, Matthew P. Fidler, Paul A. Fidler, Jr. or Ruth Naomi Fidler in a tort action instituted by Merrill T. Denslow, IV, Merrill T. Denslow, III and Paula E. Denslow (appellants). The court found in favor of appellee Erie. We affirm.

¶ 2 In the underlying action, appellants, the Denslows, filed a tort action against Matthew P. Fidler, for damages sustained by appellant Merrill Tracy Denslow, IV, when he was physically assaulted by Matthew P. Fidler at Downingtown Junior High School.[1] The amended complaint alleges that Fidler "threw the minor Plain-

tiff, Merrill Tracy Denslow, IV, with such great force that the Plaintiff's head struck the wall and a desk causing him to fall unconscious to the floor." The complaint further alleged that Fidler, in so behaving, "failed to act with due and reasonable care and in an appropriate manner under the circumstances and acted negligently and without consideration of and/or knowledge of the consequences of his actions without desiring and knowing that such consequences were substantially certain to result from his actions."

¶ 3 The Fidlers sought a defense in the Denslows' lawsuit from Erie, which had issued to them a homeowners' insurance policy. Erie, however, denied it owed either defense or indemnity based on language in the policy which specifically excluded coverage for bodily injury "expected or intended by anyone we protect." This declaratory judgment action followed, in which the trial court agreed that Erie owed its insureds neither a defense nor indemnity. We find no error.

¶ 4 The "first step in a declaratory judgment action concerning insurance coverage is to determine the scope of the policy's coverage. After determining the scope of coverage, the court must examine the complaint in the underlying action to ascertain if it triggers coverage." *General Accident Ins. Co. v. Allen*, 547 Pa. 693, 692 A.2d 1089, 1095 (1997).

¶ 5 The language of the exclusion at issue here has been held to exclude coverage where the insured "intended to cause a harm of the same general type as that which did occur." *United Services Auto. Assn. v. Elitzky*, 358 Pa.Super. 362, 517 A.2d 982, 987 (1986). Intent as used in the policy does not mean "specific intent to

1. In an earlier complaint, appellants also sued Matthew's parents, Paul A. Fidler, Jr. and Ruth Naomi Fidler for negligent supervision of their son. These claims were dropped in an amended complaint.

cause the precise injury which did occur." *Id.* at 988. "An insured intends an injury if he desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result." *Id.* at 989. Furthermore, the term "expected" in the exclusion "does connote an element of conscious awareness on the part of the insured." *Id.* at 991. Simple negligence or even recklessness would not be excluded under the policy language. *Id.*

¶ 6 The obligation of an insurer to defend an action against the insured is fixed solely by the allegations in the underlying complaint. *Id.* at 985. As long as a complaint alleges an injury which may be within the scope of the policy, the insurer must defend its insured until the claim is confined to a recovery the policy does not cover. *Germantown Ins. Co. v. Martin,* 407 Pa.Super. 326, 595 A.2d 1172, 1174 (1991). In making such a determination, we must interpret the insurance policy, bearing in mind that the construction of a writing is a question of law in which we need not defer to the finding of the trial court. *Id.* at 1174–75 (citations omitted).

¶ 7 In this case, the Denslows sought recovery for damages allegedly caused by the minor Fidler when he physically assaulted or "threw" the minor Denslow. The amended complaint in the underlying lawsuit does not expressly state that Fidler "expected or intended" the resulting injuries, and in fact refers to the incident as "negligence."[2] However, the particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint. *Mutual Bene-*

*fit Ins. Co. v. Haver,* 555 Pa. 534, 725 A.2d 743, 745 (1999). If we were to allow the manner in which the complainant frames the request for damages to control the coverage question, we would permit insureds to circumvent exclusions that are clearly part of the policy of insurance. *See id.* (allowing the language of the complaint alone to control coverage questions would "encourage litigation through the use of artful pleadings designed to avoid exclusions"). The insured would receive coverage neither party intended and for which the insured was not charged. The fact that the Denslows couched their claims in terms of negligence does not control the question of coverage. *Id.; Acceptance Ins. Co. v. Seybert,* 757 A.2d 380 (Pa.Super.2000).

¶ 8 In this case, appellants sought coverage of damages allegedly caused when young Fidler threw young Denslow against a wall and into a desk. We agree with the trial court's determination that this was intentional conduct as a matter of law. We have previously held that such claims are not covered when the policy excludes damages "expected or intended" by the insured. *See, e.g., Donegal Mut. Ins. Co. v. Ferrara,* 380 Pa.Super. 588, 552 A.2d 699 (1989) (injuries expected or intended by insured were excluded under policy; there was no coverage where defendant-insured allegedly "willfully and maliciously" kicked plaintiff in groin area causing severe injuries). A policy provision that excludes coverage for damage "expected or intended" by the insured "excludes only injury and damage of the same general type which the insured intended to cause. An insured intends an injury if he desired to cause the consequences of his act or if he acted knowing[] that such

2. The Denslows' original complaint included descriptions of the incident as an "assault and battery." This language was eliminated in

the amended complaint, presumably to avoid application of Erie's exclusionary clause.

consequences were substantially certain to result." *Germantown Ins. Co., supra* at 1175 (quoting from *Elitzky, supra* at 989). There can be no doubt that Fidler intended the "same general type" of injury as resulted here.[3]

¶ 9 Although it is possible that an insurance policy could be written to cover intentional acts, general liability insurance policies as a rule do not. To apply to intentional acts, policies must clearly provide such coverage. In general, "[t]he courts of Pennsylvania have refused to require an insurer to defend an insured for his own intentional torts and/or criminal acts." *Germantown Ins. Co., supra* at 1175 (no coverage for insured who intentionally shot several people during shooting spree in their home). *See also Gene's Restaurant, Inc. v. Nationwide Ins. Co.,* 519 Pa. 306, 548 A.2d 246 (1988) (policy provided coverage for "occurrence," which was defined as an "accident," and thus there was no coverage for alleged willful and malicious assault, an intentional tort); *Erie Ins. Exchange v. Claypoole,* 449 Pa.Super. 142, 673 A.2d 348, 356 (1996) (pursuant to the inferred intent rule, injuries resulting from sexual assault against children are intentional as a matter of law and no coverage applies despite allegations of negligence in underlying complaint against insured).

¶ 10 Appellants further argue that the trial court erred when it failed to take evidence on issues of fact created by allegations in the complaint, and entered judgment against them prematurely. They contend that the allegations of negligence on the part of Fidler, and questions about his specific intent, may be answered only by consideration of testimony.[4] However, in the instant case, no further evidence was required to determine, as a matter of law, that Fidler's actions were intentional. *See also Haver, supra* at 747 (deposition testimony by defendant-insured that he did not intend to harm the plaintiff was not considered in deciding whether allegations triggered coverage). Regardless of the language used in the complaint to "create" an issue of fact surrounding Fidler's specific intent, it is clear from the undisputed facts alleged therein that Fidler's assault on appellant Denslow was intentional. This issue therefore has no merit.

¶ 11 Order granting declaratory judgment affirmed.

---

**3.** As discussed further *infra*, we reject appellants' argument that there remains a factual question regarding whether Fidler had the specific intent to cause the very serious injuries that resulted from his intentional act. *Compare Nationwide Mut. Ins. Co. v. Hassinger,* 325 Pa.Super. 484, 473 A.2d 171 (1984) (trial court properly charged the jury that alcohol imbibed by defendant-insured was to be considered in determining whether he had the ability to formulate an intent; if one does not have the ability to formulate an intent, the act was not intentional). A federal case on which appellants rely to support their argument regarding specific intent, *Wiley v. State Farm Fire & Cas. Co.,* 995 F.2d 457 (3rd Cir.1993), is not binding on this court.

**4.** Appellants specifically assert that the trial court should not have rendered a decision in this declaratory judgment action before considering evidence in addition to Matthew Fidler's statement included in Erie's Administrative Conference Memorandum.