**ACCEPTANCE INSURANCE COMPANY, Appellee,**

v.

**Michael F. SEYBERT, The Monroe Hotel, Inc., Esor, Inc., d/b/a Belmont Bar, Dean Martinez, Donald Albert Fix, Jr., Gabe Gargarella, Joseph Slepak and Exclusive Service, Inc., Appellants.**

Superior Court of Pennsylvania.

Argued Feb. 3, 2000.
Filed July 26, 2000.

Michael D. Hnath, Butler, for Esor, appellant.

Before DEL SOLE, EAKIN and TODD, JJ.

TODD, J.:

¶ 1 This is an appeal from an order entered in the Court of Common Pleas of Butler County granting summary judgment in favor of Appellee, Acceptance Insurance Company. For the reasons that follow, we affirm.

¶ 2 Michael F. Seybert filed suit in Allegheny County against Esor, Inc. d/b/a Belmont Bar (Belmont), the Monroe Hotel, Inc. (Monroe), Dean Martinez, Donald Albert Fix, Jr., Paul Skalos, Gabe Gargarella and Joseph Slepak alleging that the five above-named individuals violently attacked him in the parking lot of the Monroe Hotel on August 12, 1996 following a night of drinking that began at the Belmont. The drinking continued at the Monroe and culminated in a fight in the parking lot among Seybert and the five individuals. Seybert was injured as a result.

¶ 3 Count II of Seybert's Complaint alleges that Appellant Belmont sold and furnished alcoholic beverages to the five individuals while they were visibly intoxicated in violation of 47 P.S. §§ 4–493 and 4–497, thereby causing them to become further intoxicated, rendering them incapable of safe and prudent conduct, and contributing to the attack on Seybert. Seybert also alleged that such conduct by Belmont's agents, servants and/or employees in serving the five individual defendants constituted negligence *per se.*

¶ 4 Appellee Acceptance Insurance Company (Acceptance) is Belmont's liquor liability carrier. Belmont sought coverage for Seybert's claims under its liquor liability policy with Acceptance. In response, Acceptance issued a reservation of rights letter in which Acceptance denied and disclaimed coverage due to policy exclusions for claims arising out of incidents of assault and battery. Acceptance then filed a declaratory judgment action pursuant to the Declaratory Judgment Act, 42 Pa. C.S.A. § 7531, in the Butler County Court of Common Pleas seeking an interpretation of its policy and a declaration that it had no duty to defend or indemnify Belmont against Seybert's claims. After the pleadings were complete, Acceptance moved for summary judgment averring that Seybert's claims against Belmont were excluded from coverage under the language of the "assault and battery exclusion" contained in the policy. The trial court granted Acceptance's motion. Belmont's Exceptions to Adjudication were denied and this appeal followed.

¶ 5 On appeal, Belmont essentially presents three issues for our review:

(1) Whether the exclusionary clause at issue in the policy does not contemplate an assault and battery taking place outside of the insured premises;

(2) Whether the assault and battery clause was ambiguous; and

(3) Whether the underlying civil action sets forth a claim for negligence and not solely a claim for assault and battery.

¶ 6 Summary judgment properly is granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b). The scope of our review of an order granting or denying a motion for summary judgment pursuant to Rule 1035 is well established. In reviewing an order granting summary judgment, an appellate court must examine the record in the light most favorable to the nonmoving party. *Curbee, Ltd. v. Rhubart,* 406 Pa.Super. 505, 594 A.2d 733, 735 (1991); *Laventhol & Horwath v. Dependable Insurance Associates, Inc.,* 396 Pa.Super. 553, 579 A.2d 388, 390 (1990). We will reverse only if there has been an error of law or a clear abuse of discretion. *Hetrick v. Apollo Gas Co.,* 415 Pa.Super. 189, 608 A.2d 1074, 1077 (1992).

[2] ¶ 7 The interpretation of an insurance policy is a question of law for the court to determine. *Curbee, Ltd. t/a Black Angus Inn v. Rhubart*, 406 Pa.Super. 505, 594 A.2d 733, 735 (1991). It is well-settled that:

> Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement ... Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.

*Standard Venetian Blind Company v. American Empire Insurance Company*, 503 Pa. 300, 304–05, 469 A.2d 563, 566 (1983) (citations omitted).

¶ 8 The relevant portions of the Liquor Liability Policy in effect which was issued to Belmont by Acceptance are as follows:

I. Coverage X—Liquor Liability

. . .

Exclusions

This insurance does not apply:

. . .

(d) To bodily injury or property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto; but this exclusion does not apply to bodily injury or property damage for which the insured or his indemnity may be held liable if such liability is imposed

(1) by, or because of the violation of any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or

(2) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person.

(Acceptance Insurance Liquor Liability Policy, Reproduced Record ("R.R.") at 65a.) A separate Endorsement page to the policy contains the following provision at issue in this case:

(2) Form 131(Rev) Assault and Battery Exclusion:

> It is agreed that the insurance does not apply to Bodily Injury, including death, and/or Property Damage arising out of assault and/or battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person.

(Id. at 67a.)

[3] ¶ 9 At issue is Acceptance's duty to defend Belmont, not whether Belmont is actually liable to Seybert. Pennsylvania law is clear that:

> An insurer's duty to defend the insured is dependent upon the derivative question of coverage. It is well established that while an insurer is not required to defend an insured in every claim brought against it, an insurer must defend in any suit in which there exists *actual or potential* coverage.

*Hartford Mutual Insurance Company v. Moorhead*, 396 Pa.Super. 234, 578 A.2d 492, 494 (1990) (emphasis supplied); *Gene's Restaurant v. Nationwide Ins.*, 519 Pa. 306, 308, 548 A.2d 246, 246 (1988).

[4] ¶ 10 In determining whether there exists a duty to defend:

> The terms of the policy must be compared to the nature of the allegations of the complaint, and a determination made as to whether, if the allegations are sustained, the insurer would be obligated to incur the expense of the judgment.

*Hartford Mutual, id.* The standard to be applied in reviewing insurance contracts in Pennsylvania is the reasonable expectation of the insured. *Dibble v. Security of America Life Insurance Company*, 404 Pa.Super. 205, 590 A.2d 352 (1991).

¶ 11 Belmont argues that because Seybert's underlying Complaint contains counts against Belmont sounding in negligence, Acceptance has an absolute duty to defend Belmont despite the fact that Seybert's injuries undeniably were caused by intentional acts that are specifically excluded by the liability policy in effect. In support of its position, Belmont cites *Britamco Underwriters, Inc. v. Weiner*, 431 Pa.Super. 276, 636 A.2d 649 (1994). There, a general liability insurer brought a declaratory judgment action seeking a declaration that it had no duty to defend or indemnify its insured in an underlying tort action. The trial court denied its petition and this Court affirmed, holding that because the plaintiff, who had been struck in a bar, asserted alternative theories of liability sounding in assault and battery, negligent infliction of emotional distress and claims of general negligence, the insurer owed a duty to defend. One count of plaintiff's complaint in *Weiner* referred to the incident in question as an "accident", clearly suggesting the possibility of negligence as opposed to an intentional assault and battery.

¶ 12 In contrast to the instant case, the plaintiff in *Weiner* did not set forth a separate count in his complaint against the individuals who allegedly struck him. Here, although Seybert's Complaint contains allegations that Belmont employees served the five individual defendant's while visibly intoxicated before they left Belmont's premises, the Complaint contains no allegations that Seybert's actual injuries were caused in any way other than by assault and battery by the five men in the Monroe parking lot. There is no suggestion that Seybert's injuries were an accident, as was suggested in *Weiner*, or were negligently caused directly by Belmont employees. Seybert's attack did not occur on Belmont premises. Therefore, no other allegations of negligence against Belmont reasonably could have been made.

¶ 13 Acceptance cites *Britamco Underwriters, Inc. v. Grzeskiewicz*, 433 Pa.Super. 55, 639 A.2d 1208 (1994), in support of its position. Britamco insured Dagwood's Pub, where a patron was injured by another patron who deliberately attacked her with a beer bottle. The complaint also alleged negligence by Dagwood's agents, servants and employees. Following review of the assault and battery endorsement in the Britamco insurance policy, this Court held that the provision clearly and unambiguously excluded intentional acts such as the plaintiff's assault from Dagwood's coverage.

¶ 14 A review of the language contained in the assault and battery exclusion in the instant case leads to a similar conclusion. It is clear and unambiguous and expressly excludes from coverage bodily injury *"arising out of assault and/or battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person."* (Assault and Battery Exclusion, R.R. 67a ( emphasis added).)

¶ 15 Belmont also argues that the trial court erred in granting Acceptance's motion for summary judgment because the exclusionary clause at issue does not contemplate assaults and batteries taking place outside of the insured's premises. Belmont alleges that because the language of the assault and battery exclusion is not specific as to its application to circumstances involving an employee or patron while the individual is off the premises, Acceptance therefore owes Belmont a defense. We disagree. Our review of the exclusionary language in question leads us to determine that no special exception should be carved for assaults or batteries which did not occur on Belmont's premises. As Acceptance aptly suggests, the exclusionary language at issue applies to *conduct*, regardless of location. Such clear, unambiguous language excludes precisely the type of conduct complained of in the underlying tort action. Accordingly, we affirm the holding of the Court of Common

Pleas of Butler County that Acceptance owes Belmont no duty to defend Seybert's underlying tort action.

¶ 16 Order affirmed.

¶ 17 Judge DEL SOLE files a dissenting opinion.

DEL SOLE, J., dissenting:

¶ 1 While I agree with much of the analysis in the majority opinion, I believe the entry of summary judgment is premature.

¶ 2 Seybert, in his initial complaint, pled both intentional torts, *i.e.*, battery and intentional infliction of emotional distress, and negligence on the part of the actors who caused his injuries. Until it is factually determined that Seybert's injuries were solely a result of an assault and battery and not negligent conduct, Acceptance has a duty to defend its insured, Esor, Inc.

¶ 3 If the factual allegations of the complaint against the insured state a claim which would potentially fall within the coverage of the policy, then the insurer has the duty to defend. *Biborosch v. Transamerica Ins. Co.*, 412 Pa.Super. 505, 603 A.2d 1050 (1992), *appeal denied*, 532 Pa. 653, 615 A.2d 1310 (1992). It is the nature of the claim, not the actual details of the injury which determines whether the insurer is required to defend. *Springfield Twp. v. Indemnity Ins. Co.*, 361 Pa. 461, 64 A.2d 761 (1949). In making this determination, the factual allegations of the complaint are taken to be true and the complaint is to be liberally construed with all doubts as to whether the claims may fall within the coverage of the policy to be resolved in favor of the insured. *Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 152 A.2d 484 (1959).

¶ 4 Allegations of negligence appear in several paragraphs of Seybert's complaint, namely Count III, ¶ 30, 31 and 32, Count VI, ¶ 46, 47, and 48, Count IX, ¶ 62, 63, and 64, Count XII, ¶ 78, 79, and 80, and Count XV, ¶ 94, 95, and 96. It is on the basis of these allegations of negligent con-

duct that the duty to defend arises. For this reason, I would reverse the grant of summary judgment.